ORIGINAL
FILED
NOV 6 2013
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TOTAL ENGINEERING, INC.,<br>9344 Lanham Severn Road, Suite 200<br>Lanham, Maryland 20706<br><br>                Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>DEPARTMENT OF THE ARMY<br>U.S. Army Corps of Engineers,<br>Baltimore District<br>P.O. Box 1715<br>Baltimore, Maryland 21203-1715<br><br>                Defendant. | Case No. **13-881 C** |

## COMPLAINT

Total Engineering, Inc. ("Total"), through undersigned counsel, respectfully files this Complaint. In support thereof, Total states the following:

### PARTIES

1. Total Engineering, Inc. ("Total") is a Virginia corporation with its primary place of business located at 9344 Lanham Severn Road, Suite 200, Lanham, Maryland 20706.

2. The Department of the Army, U.S. Army Corps of Engineers, Baltimore District ("the Government") is a procuring agency of the United States of America

### JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1346, 1491 and 41 U.S.C § 609(a).

## FACTS

### A. The Project

4. In early 2009, the Government began to solicit proposals related to the construction of the U.S. Army Medical Research Institute of Chemical Defense – Replacement Facility at the Aberdeen Proving Grounds in Edgewood, Maryland (the "Project").

5. The Project work was broken up into two separate phases (and two separate contracts) – the Early Site Package and the Primary Building Package.

6. The primary purpose of the Early Site Package was to prepare the site for the construction of the USAMRICD Replacement Facility under the Primary Building Package.

7. The Primary Building Package was awarded to Clark Construction Group ("Clark") under Contract No. W912D-09-C-0052.

### B. Total's contract scope of work

8. On or about April 10, 2009, the Government awarded the Early Site Package to Total under Contract No. W912DR-09-C-0030 (the "Contract").

9. The Contract's scope of work included, but was not limited to: demolition and removal of thirteen (13) existing homes on the Project site; hazardous material abatement (including asbestos); demolition and removal of existing utilities and concrete paving (e.g., roads and sidewalks) serving the homes; salvage materials from home and utility demolition to accomplish LEED certification goals; removal of unexploded ordnance around Project site; installation of erosion and sediment controls; excavate approximately 35,000 cubic yards of soils from the Project Site; grade the Project site; and construct turn-key (i.e., fully operational) job trailers for the Government to use during both the Early Site Package and the Primary Building Package work.

10. The Contract work also included the removal of an existing underground and above-ground steam line system, and construction of a new steam line system (the "Steam Line Work"). The existing steam line needed to be demolished and moved in order to make way for the Replacement Facility.

### C. The Steam Line Work

11. The Government's Contract documents contained design specifications detailing how the Steam Line Work was to be constructed.

12. The new steam line consisted of two parallel pipes – a 10 inch steam line and a 6 inch condensate/return line – and would travel across the Project site to connect the Replacement Facility with the nearest steam main. When completed the new steam line system would travel approximately 40% of its distance underground then transfer above-ground as it traveled the remaining distance to its terminus.

13. The underground portions of the new steam line system were installed in a concrete trench with a removable concrete lid. Inside the trench, the steam and condensate lines were anchored to rebar-reinforced concrete piers at five locations, and were supported by "sliding" connections at the remaining piers. Above ground, the new steam and condensate lines were supported on steel columns anchored to caissons.

14. Total constructed the concrete trench, the concrete piers, the steam line anchors, the slides and guides, the above-ground caissons, and the steam and condensate lines in accordance with the Contract Documents.

15. During a hydrostatic pressure test of the new steam line system on June 17, 2010, at least one concrete pier with a fixed steam line connection within the underground trench failed.

16.   The Government's design is the most probable cause for the Steam Line's failure.

### D. The Government removes the Steam Line Work from Total's Contract scope

17.   On August 19, 2010, the Government notified Total of its decision to remove the entire steam line system from Total's Contract Scope of Work (the "Deductive Change Order"). In the Deductive Change Order, the Government specifically invoked FAR 52.243-4, stating:

> Given these circumstances, it is the decision of the Contracting Officer to modify the contract to remove the new steam system and all features of the work required to render it operational. This modification will be in accordance with Contract Clause 52.243-4 Changes.

18.   The Deductive Change Order also instructed Total to cease all construction work on the new steam line system the following day at noon.

19.   On August 24, 2010, in response to Total's submission of Payment Application No. 15, the Government noted:

> The pending modification for steam system work is anticipated at $425,000.00. This modification will delete work not satisfactorily complete. This work includes, but is not limited to, pier construction, caisson construction, stanchion construction, pipe installation, insulation installation, manhole construction.

The Government further noted it would – and, in fact, did – withhold the $425,000 from Payment Application No. 15 and future payment applications.

20.   After issuing the Deductive Change Order, the Government awarded the Steam Line Work to Clark as an additive change order to the Primary Building Package Contract.

### E. The Contracting Officer's Final Decision

21.   On or about November 15, 2012, two years later, the Contracting Officer issued a final decision, alleging that Total's defective work resulted in the steam line failure and claiming that Total owed the Government the amount of Two Million Three Hundred One Thousand Two Hundred and Nine Dollars ($2,301,209) for costs it allegedly incurred to complete the Steam

Line Work. A true and correct copy of the Contracting Officer's Final Decision (without attachments) is attached to this Complaint as Exhibit 1.

## COUNT I
### (Contracting Officer's Final Decision)

22. Total restates and realleges the allegations contained in Paragraphs 1 through 21 as if set forth fully herein.

23. The Contracting Officer issued a Final Decision on November 15, 2012 in which he alleged Total's work was the cause of the steam line failure and claimed that Total owed the Government a credit of $2,301,209.00.

24. This lawsuit is filed within twelve (12) months of the Contracting Officer's Final Decision.

25. The Government issued design specifications for the construction of the new steam line, which it warranted.

26. Total constructed the new steam line in accordance with the Government's design specifications.

27. The Government's design is the most probable cause of the steam line system's failure.

28. As a result, the Government is not entitled to its requested credit and Total is entitled to payment of the outstanding contract balance of Six Hundred Thirty-Seven Thousand Eight Hundred Thirty-Nine Dollars ($637,839)

Dated: November 6, 2013                    Respectfully submitted,

 

_____
Stephen M. Seeger (Admission: 8/27/1992)
SEEGER, PC
2620 P Street, NW
Washington, DC 20007
Tel.:   (202) 822-8838
Fax:   (202) 822-6982
Email: seeger@seeger-law.com
*Counsel for Total Engineering, Inc.*